IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUNA COLLISION LTD, | |
| *Plaintiff,* | Civil Action No. 2:25-cv-867 |
| v. | Hon. William S. Stickman IV |
| CITY OF DUQUESNE, *et al,* | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Luna Collision LTD ("Luna") is a licensed and insured collision repair and towing business located within the City of Duquesne. It filed an initial complaint alleging a violation of 42 U.S.C. § 1983 against Defendants, the City of Duquesne ("the City"), Police Chief Tom Shaw ("Shaw"), and Duquesne's City Manager Douglas Sample ("Sample"), in their individual and official capacities (collectively, "Defendants"). (ECF No. 1). The Court granted the City's motion to dismiss Luna's initial complaint, and the official capacity claims against Shaw and Sample were dismissed with prejudice. The other claims were dismissed without prejudice. (ECF Nos. 22, 28 and 29). Luna subsequently filed an amended complaint that includes one claim against Defendants under § 1983–a violation of the Equal Protection Clause under a class of one theory. (ECF No. 31). Defendants filed a motion to dismiss. (ECF No. 34). For the following reasons, the motion will be granted.

## I.    FACTUAL BACKGROUND

For approximately twenty years, Luna has operated as a towing and collision repair business within the City. (ECF No. 31, ¶ 11). In addition to owning property and paying local

taxes within the City, Luna employs local workers and serves the City's residents and surrounding communities. (*Id.* at ¶ 12). According to Luna, it is in possession of the necessary equipment, staffing, insurance, and licensing—including a valid Pennsylvania Certificate of Authorization as a licensed salvor[1]—and has the requisite experience to perform the towing services that the City needs. (*Id.* at ¶ 13). The City, through the Duquesne Police Department, refers local towing companies to respond to accidents, disabled vehicles, and impound situations. (*Id.* at ¶ 14). Luna asserts that the City does not have a formal written policy, neutral criteria, or publicly available standards governing the selection of towing companies for municipal referrals; rather, the towing referrals are discretionary decisions made by the City officials, including the chief of police. (*Id.* at ¶ 15–16). Luna alleges those discretionary decisions are made "without objective guidelines, documentation, or oversight." (*Id.*).

Luna opened its business in 2005 and, since then, has repeatedly sought inclusion in the referral system. Its efforts include engaging legal counsel for assistance with communicating both

---

[1] In its initial complaint, Luna stated that it was "not a licensed salvor, which is necessary for certain towing operations," and that the City's failure to act on its application for a salvor license was indicative of their differential treatment. (ECF No. 1, ¶¶ 19, 21–22). Now in its amended complaint, Luna asserts that it has a salvor license and "previously held a salvor license for many years prior to the filing of this action," further contending that the City "was aware that Plaintiff had held a salvor license in the past and is aware that Plaintiff is currently licensed." (ECF No. 31, ¶¶ 32–34). Defendants highlight the new contradictory factual allegation relating to Luna's salvor license. (ECF No. 35, p. 2). Luna failed to address the discrepancy in its reply. (ECF No. 40). The United States Court of Appeals for the Third Circuit has clearly instructed that a plaintiff is not bound by allegations in a superseded complaint; rather, allegations in a previous version of the complaint become " 'functus officio,'" and "'cannot be considered by the court on a motion to dismiss the amended complaint.'" *West Run Student Hous. Associates, LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013) (quoting *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998)); *see also Z View Enters, LLC v. Giant Eagle, Inc.*, 834 F. App'x 709, 712 (3d Cir. 2020) (stating, that a pleading supersedes the earlier pleading and renders the original pleading a nullity). To the extent the allegations set forth by Luna in the amended complaint contradict the allegations set forth in the original complaint, the contradictions have no legal effect on the Court's resolution of the motion to dismiss.

Luna's desire for inclusion in the City's towing referrals, as well as its purported qualifications as a towing business. (*Id.* at ¶ 20). Although Luna has made many attempts for the City to use it as a referral, it has never been chosen. Further, Luna alleges that it has never received any written explanation, criteria, or opportunity to challenge or appeal the City's repeated "exclusion." (*Id.* at ¶ 13–14). Luna states that it "raised concerns regarding exclusion from municipal towing referrals to City representatives, including at least one public City Council meeting" and still, its "exclusion continued without review or reconsideration." (*Id.* at ¶¶ 19, 23).

Luna alleges, "[u]pon information and belief, the City routinely dispatches Leo's Service Center ("Leo's"), located within [the City], for the majority of municipal towing referrals." (*Id.* at ¶ 23). If Leo's is unavailable, the City will refer Nickolich Towing ("Nickolich") and Mac's Auto Services ("Mac's"), which are both located outside of the City. (*Id.* at ¶ 24). Luna reiterates that it has comparable qualifications to those towing companies, but highlights that it is located within the City, while Nickolich and Mac's are not. (*Id.* at ¶ 25). Despite its location, comparable equipment, staffing, experience, and availability, Luna was not contacted or used as a referral "on multiple occasions," even when Leo's was unavailable. (*Id.* at ¶¶ 26–29).

Luna states that the City has not articulated criteria, or provided documentation, that gives a performance-based or safety-related reason for excluding Luna from referrals on these occasions. (*Id.* at ¶ 31). Despite its qualifications and appropriate licensure, Luna maintains that the City has continued to exclude it from all municipal towing referrals. Specifically, Luna emphasizes that, because it possesses the proper licensure, "licensing status is not the actual basis for Plaintiff's disparate treatment." (*Id.* at ¶¶ 35–36).

Luna identifies Police Chief Tom Shaw as the individual who exercised authority over the City's police department's towing referrals. (*Id.* at ¶ 37). The towing referral decisions were made

on a discretionary basis within the police department, without relying on criteria or guidance. According to Luna, "Shaw's actions and acquiescence" while knowing that Luna sought inclusion in the municipal towing referrals "constituted differential treatment under color of state law." (*Id.* at ¶¶ 39–40). Luna further states that City Manager Douglas Sample "exercised supervisory authority over municipal departments and was responsible for overseeing City operations, including practices affecting municipal services and vendor relationships." (*Id.* at ¶ 42). And that, "Sample knew or reasonably should have known that [Luna] had been excluded from municipal towing referrals for many years despite [its] qualifications, licensure, and repeated efforts to obtain inclusion" but "failed to take action to review [Luna's] exclusion, implement neutral criteria for municipal towing referrals, or correct the arbitrary practices described herein." (*Id.* at ¶¶ 43–44). Luna asserts that "Sample's failure to act in the face of known exclusion constituted acquiescence in and deliberate indifference to the unconstitutional conduct challenged in this action." (*Id.* at ¶ 45). Additionally, Luna states that the City officials were, or should have been, aware of Luna's exclusion from towing referrals but failed to prevent arbitrary exclusion by adopting neutral criteria or implementing safeguards. (*Id.* at ¶¶ 46–47). As such, Luna claims that the "City's conduct constitutes a municipal custom or practice of discretionary towing referrals that resulted in Plaintiff's disparate treatment." (*Id.* at ¶ 48).

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them

4

in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

Section 1983 provides a plaintiff with a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018). To sufficiently allege a claim for relief under § 1983, a plaintiff must plead (1) that he/she suffered a violation of a constitutional right or right secured by federal law and (2) that the violation of the law and deprivation of the constitutional right was committed by the defendant, "a person acting under the color of state law." *Id.* The Court must first consider

whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (*en banc*) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  As explained below, Luna's amended complaint fails to allege a plausible constitutional claim against Defendants.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.  The United States Supreme Court interpreted the provision as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A plaintiff can, as Luna has, invoke the "class of one" theory to claim that its rights, as provided by the equal protection clause, have been violated. *Hill v. Borough of Kutztown*, 455 F.3d 224, 239 (3d Cir. 2006).  A plaintiff must satisfy a three-part test to state a claim under a class of one theory, and in doing so, must show that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Id.*; *see also Newark Cab Ass'n v. Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (recognizing that, in a class of one equal protection claim, the plaintiff must allege that he has been intentionally treated differently from others similarly situated and that "there was no rational basis for the difference in treatment").  When a plaintiff alleges an equal protection violation through disparate treatment as a class of one, the intentional differential treatment must be "irrational and wholly arbitrary." *Eichenlaub v. Twp. Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (citations omitted).

As to the first prong of the test, in its initial complaint, Luna provided the Court with similarly situated comparators – three towing companies, Leo's, Nickolich, and Mac's

6

(collectively "towing companies"). At the motion to dismiss stage, Luna need not "show that [comparators] are identical in all relevant aspects but only that they are alike." *Eiswerth v. Lackawanna Cnty. Sheriff's Dep't.*, No. 3: 24-cv-01214, 2025 WL 510971, at *5 (M.D. Pa. 2025) (citing *Startzell*, 533 F.3d at 203). In adjudicating the first motion to dismiss, the Court determined that Luna met its burden in alleging "facts sufficient to make plausible the existence of such similarly situated parties," as the Third Circuit requires. *Perano v. Twp. Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting *Startzell v. City Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). Luna's factual assertions led the Court to find that Luna could perform the same functions as the towing companies and that they are all located in or near Duquesne.[2] (ECF No. 28).

Luna has not alleged any additional facts in its amended complaint that require the Court to alter its initial findings. Luna already established, through the facts alleged in its initial complaint, that the towing companies were similarly situated—they are enough alike to satisfy the comparator designation. The facts in its amended complaint provide the same allegations that allowed the Court to make its initial determination—Luna did not need to allege any further facts to solidify that it is similarly situated to the towing companies. The Court stands by its initial analysis. Luna has shown that it is comparable to the towing companies in all relevant aspects, thus satisfying the first prong of the class of one test.

---

[2] *See supra* text accompanying note 1. The assertion that Luna is a licensed salvor (in contradiction with its original assertion in its initial complaint (ECF No. 1, ¶ 9)), providing it with the same licensures as the towing companies, is irrelevant to the Court's analysis of whether Luna is similarly situated to the towing companies. Despite its original assertion that it was not a licensed salvor, the Court found that Luna had sufficiently alleged it was similarly situated to the towing companies. *See* (ECF No. 28, p. 7) ("Luna can perform the same functions as its named comparators (other than salvage work), and they are all located in or near Duquesne. The Court holds that the first prong for a class of one theory has been adequately pled").

7

A plaintiff must satisfy prong two of the test by demonstrating that the defendant intentionally treated him differently from those that are similarly situated. The Third Circuit has held that a plaintiff must "provide evidence of a discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (citation omitted). A plaintiff has the burden to show that "the decisionmaker … selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Wayte v. United States*, 470 U.S. 598, 610 (1985). "General accusations" of wrongful conduct are insufficient if there are no specific facts in a complaint that, when taken together, allege intentional differential treatment. *Phillips v. Cnty. Allegheny*, 515 F.3d 224, 244–45 (3d Cir. 2008). A plaintiff's allegations must specify "occasions or circumstances" that indicate the defendant's intention to treat the plaintiff differently. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005).

The Court finds that Luna has failed to allege specific occasions or occurrences when Defendants treated it differently than the comparator towing companies. *See Young*, 160 F. App'x at 266 (holding that plaintiffs must allege "occasions or circumstances" showing differential treatment rather than conclusory statements of claims). The amended complaint is riddled with conclusory statements and bald assertions, none of which are supported by specific facts illustrating particular occasions where Luna's right to equal protection was violated. For example, Luna asserts that "[s]ince opening its business in or about 2005, [it] has made repeated efforts to obtain inclusion in the City's municipal towing referral system," but was unsuccessful. (ECF No. 31, ¶ 18). Luna goes on to plead that notwithstanding persistent requests, a city council appearance, and counsel's outreach, the City repeatedly called the same favored providers, including two based outside Duquesne instead of contacting Luna. (ECF No. 31, ¶¶ 18–19, 27–

8

29).  Luna further alleges that Defendants' "conduct constitutes intentional differential treatment because [Luna] was treated differently from similarly situated companies under comparable circumstances without a rational or legitimate governmental justification."  (*Id.* at ¶ 54).  Luna does not provide any *specific* facts that support this allegation.  Instead, Luna merely states that Defendants deliberately exclude Luna, favoring the other towing companies, "including in specific dispatch situations where Plaintiff was equally or better positioned to respond."  (*Id.* at ¶ 53).  Merely using the term "specific dispatch situations" does not, without more, satisfy Luna's burden to allege specific occasions or occurrences.

The amended complaint also pleads that "[o]n multiple occasions over the past several years, motor vehicle accidents and disabled vehicles occurred within the City of Duquesne for which the Duquesne Police Department requested towing services," but on such occasions "the City dispatched [Leo's] or, when Leo's was unavailable, [Nickolich] or [Mac's], despite Plaintiff being located within the City, open for business, and capable of responding."  (*Id.* at ¶¶ 26–27).  Luna further contends, "[o]n information and belief, the City dispatched towing companies located outside the City to respond to accidents and disabled vehicles occurring within Duquesne while Plaintiff was available and qualified to respond."  (*Id.* at ¶ 29).  These statements are repetitive and equally vague.

Luna argues that its amended complaint is sufficient for several reasons.  First, it claims "Rule 8 does not require [Luna to identify dispatch-by-dispatch dates, logs, and incident numbers] at the pleading stage…particularly where the claim concerns a continuing municipal practice." (ECF No. 39, pp. 5–6).  Luna contends that its identification of similarly situated towing companies and its allegation that "Luna provides the same services with comparable capacity and qualifications" while having a proximate location to the city, states a plausible claim of intentional

9

differential treatment. (*Id.*). Second, Luna emphasizes that it "pleads not an isolated or occasional omission, but a sustained and categorical practice," citing the "many occasions over the many years" where the City referred towing to other towing companies without "articulat[ing] criteria or document[ing] any performance or safety-based reason for excluding Luna on those occasions." (*Id.* at 5) (citing (ECF No. 31, ¶¶ 26–35)). According to Luna, the fact that "referrals were discretionary, and … no formal appeal or review exists … reinforce[s] that exclusion is not a one-off clerical mishap but a practice carried out through discretionary decision[ ]making." (*Id.*). According to Luna,"[a]t the pleading stage, the question is not whether Luna has already proven discriminatory purpose with documentary corroboration, it is whether the alleged facts permit a reasonable inference that the City differential treatment is intentional rather than accidental." (*Id.* at 5–6).

Luna misunderstands the pleading requirements for a class of one equal protection claim. It only sets forth "blanket assertions" that, on "many occasions," it was treated differently than the similarly situated towing companies and provides nothing more than it did in its initial complaint: that Luna has allegedly been continuously overlooked as a referral while the other companies have been chosen. Courts in this circuit have similarly found that allegations "devoid of any facts identifying … specific instances demonstrating a difference in treatment" will fail to meet the pleading standard. *Perano v. Twp. Tilden*, No. 09-00754, 2010 WL 1462367, at *10 (E.D. Pa. Apr. 12, 2010), *aff'd,* 423 F. App'x 234 (3d Cir. 2011) (allegation insufficient to "support an inference that similarly situated developers were treated differently" when "Plaintiff's Amended Complaint makes boilerplate assertions that Defendants' refusal to grant approvals, licenses, and permits was done in favor of the interests of other developers in Tilden Township over those of Plaintiff."). The Third Circuit has held that "[t]he law cannot provide a constitutional remedy for

10

every situation where a party may feel slighted; claims appealing to the Equal Protection Clause must meet a higher bar." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). The Court finds, as it did in its initial opinion, that Luna's allegations are conclusory. Although Luna has supplemented its pre-existing factual assertions by attempting to provide the Court with new facts, its additions are nothing more than "formulaic recitation[s] of the elements" required to state a claim of intentional differential treatment. *Id.; see Young*, 160 F. App'x at 266; *see also Perano*, 2010 WL 1462367, at *10 ("even accepting Plaintiff's additional allegations in his responsive briefs…Plaintiff has failed to plead sufficient facts to raise his right to relief above the speculative level, and his equal protection claim will be dismissed").

Even if Luna had pled sufficient facts demonstrating it was subjected to intentional differential treatment, it failed to meet its burden to demonstrate the last prong of the test – that Defendants' referral decisions were irrational and wholly arbitrary. The third prong of a class of one equal protection claim requires that the plaintiff show "there was no rational basis for the difference in treatment." *Newark Cab Ass'n*, 901 F.3d at 166. In other words, where there is any "reasonably conceivable state of facts that could provide a rational basis" for the disparate treatment, a "class of one" equal protection claim fails. *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). "Rational basis review is a very deferential standard." *Newark Cab Ass'n*, 901 F.3d at 156.

As is the case here, the "presumption of rationality" given to defendants under a rational basis review "is in tension with the liberal pleading standard" of a Rule 12(b)(6) motion to dismiss. *Rucci v. Cranberry Twp., Pa.*, 130 F. App'x 572, 575 (3d Cir. 2005). The Third Circuit instructs district courts, in an effort to "accommodate both interests," to "accept as true all of the complaint's allegations, including all reasonable inferences that follow, and assess whether they are sufficient

11

to overcome the presumption of rationality" given to the challenged practice. *Id.* If, in its acceptance of the complaint's allegations, a district court identifies facts that may present any conceivable rational basis for the defendant's action, the plaintiff has not met its burden. *Highway Materials*, 386 F. App'x at 259 (citing *Heller*, 509 U.S. at 320). The Third Circuit has additionally held that "the plaintiff must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B. v. Pa. Dept. of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000). Defendants, conversely, need not provide an articulated rationale for its actions at any time, and it is further appropriate for a court to "hypothesize interests that *might* support [the defendant's] decisions." *Mary Beth's Towing LLC v. Borough Brownsville*, No. 2:16-cv-00452, 2018 WL 1784556, at *9 (W.D. Pa. Apr. 13, 2018) (quoting *Hassan v. City of N.Y.*, 804 F.3d 277, 305 (3d Cir. 2015)).

Luna alleges that it is a "long-established, licensed, and insured towing and collision repair business located within the City of Duquesne," and "[f]or nearly two decades, [it] has sought inclusion in the City's towing referral system and has been excluded without standards, explanation, or rational basis." (ECF No. 31, ¶ 2). It repeatedly references Defendants' discretionary towing referral decisions, specifically in the absence of formal "policy, neutral criteria, or publicly available standards," in reference to its allegations that Defendants acted irrationally and arbitrarily. (*Id.* at ¶¶ 4, 15, 44, 47, 55–56). Discretionary decisions do not suffice to state a class of one claim. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602–04 (2008). The Supreme Court has held that "treating like individuals differently is an accepted consequence of the discretion granted," and if those discretionary decisions could be challenged "based on the arbitrary singling out of a particular person" it would hinder state officials' discretionary decision making, which they were entrusted with as part of their duties. *Id.* at 605. Thus, a district court

must assess whether the defendant is "exercising discretionary authority based on subjective, individualized determinations" or whether the defendant's actions were a departure from a "clear standard" to determine if the defendant's actions were irrational. *Id.* at 602.

Defendants argue that Luna has not alleged any facts to suggest they acted irrationally noting that: (1) "the City of Duquesne does not have a towing policy and decisions are made using discretion"; (2) "there is no contractual agreement between Luna and the City of Duquesne that could require Luna to be added to the towing list or to be referred towing work. The choice of which towing provider to use is completely discretionary"; (3) "the City of Duquesne utilizes Leo's unless they are unavailable"; and (4) "[t]he City could choose to use Leo's and the other providers for a myriad of subjective reasons." (ECF No. 35, p. 13). Citing *Mary Beth's Towing* for support, Defendants aver that the City "determined that Leo's is in the best position to provide towing services," and "[i]t is rational to state that the City chose to use the other providers for each individual instance when Leo's was unavailable as the other providers were more convenient for that specific instance." (*Id.*).

Although Luna claims that Defendants' use of *Mary Beth's Towing* in support of their position is improper because that case was decided at the summary judgment stage, the Court finds the analysis in *Mary Beth's Towing* to be informative to its assessment of rationality. In *Mary Beth's Towing*, the district court applied the holding in *Engquist* to settings outside the scope of government employment, reasoning that other courts have also used *Engquist* outside of government employment settings, like in cases focusing on "the government's treatment of contractors." *Id.* at *8. The district court found that the plaintiff did not satisfy the required showing of intentional treatment nor irrational and arbitrary decision making, and thus failed to allege a plausible Fourteenth Amendment claim. *Id.* Importantly, it held that defendants had a

13

conceivably rational basis for failing to use plaintiff as a towing referral: "the Borough was simply exercising discretion based on a subjective assessment of the towers' respective abilities to provide efficient service." *Id.*

The Court agrees with the district court's analysis in *Mary Beth's Towing* that discretionary decisions made for purposes of choosing the best towing company as required by circumstance is rational. Subjective and circumstantial decisions, made for purposes of efficient service, are rationally related to a legitimate public interest. Defendants provide the same rationale here as defendants did in *Mary Beth's Towing*—that Luna has not pled facts evidencing that it was ever guaranteed towing referrals, that there is an existing policy that would have entitled Luna to receive referrals, that a contractual agreement exists between the City and Luna, or that legal authority exists which would otherwise restrict how the City may determine which towing companies receive referrals. Luna alleges no facts that demonstrate the existence of any procedure necessary to establish Defendants' intentional differential treatment towards Luna. A significant factor in demonstrating a successful class of one claim is "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Baker v. Dep't Corrections*, No. 13-3087, 2015 WL 5227458, at *6 (D.N.J. Sept. 8, 2015) (citing *Engquist*, 553 U.S. at 602–04). However, where, as here, there is no existing procedure that Defendants have clearly departed from when failing to use Luna as a referral, the Court cannot find that the discretionary decision making was irrational or wholly arbitrary.

Even if there was an existing policy, without pleading sufficient facts, Luna's claim would still fail. The district court in *Yakopovich v. Borough Centerville*, No. 2:20-cv-00331, 2021 WL 4875219 (W.D. Pa. Oct. 26, 2021), extended the *Engquist* holding to a class of one claim challenging alleged unequal enforcement of a local ordinance. The plaintiffs in *Yakopovich*

claimed that they were subjected to "irrational and wholly arbitrary treatment" because they were ticketed for violations of an ordinance while other property owners, allegedly violating the same ordinance, were not. *Id.* at *7. The district court concluded that the "[o]rdinance vested [the Code Enforcement Officer for Centerville] with discretion to issue (or not issue)" tickets for violations. *Id.* at *2 & *6. Given the discretionary nature of enforcing the ordinance and Plaintiffs' sole assertion that other landowners were not ticketed for the same violations, the district court held that "Plaintiffs' evidence is simply insufficient to demonstrate that Defendants" lacked a rational basis for their actions. *Id.* at *7; *see also Zahl v. New Jersey Dept. L. & Pub. Safety*, No. 06-3749, 2010 WL 891839, at *4 (D.N.J. Mar. 10, 2010), *aff'd sub nom, Zahl v. N.J. Dep't L. & Pub. Safety Div. Consumer Affs.*, 428 F. App'x 205 (3d Cir. 2011) (dismissing Plaintiffs class of one claim under the rational basis prong where the Plaintiff was challenging the revocation of his medical license, but only asserted that he "was treated differently than other New Jersey doctors who [similarly] had billing and paperwork issues." The district court explained that the decision to bring disciplinary action "was an individual assessment made by attorneys for the state of New Jersey entrusted with prosecutorial discretion little different than that of the hypothetical ticketing officer in *Engquist*."). The same is true here. Luna has failed to invalidate the reasonably conceivable reason for choosing towing operators set forth by Defendants that provides a rational basis for their conduct.

The Court is not hypothesizing as to a rational basis for Defendants' actions – as set forth in the amended complaint, the City uses Leo's unless they are unavailable. The Court will not wade into the distribution of local resources, especially when it comes to towing contracts, as the quality and number of towing companies the City requires to conduct tows is not for the Court to decide. *See Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 705 (E.D. Pa. 2017) (citing *Heller*,

15

509 U.S. at 320) ("Rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness or logic' of government activity"). Municipalities are not compelled by the Equal Protection Clause to develop a formal process with constitutionally measurable criteria for determining from whom they will purchase towing services. *See Engquist*, 553 U.S. at 606. "The Equal Protection Clause does not require '[t]his displacement of managerial discretion by judicial supervision.'" *Id.* at 608–09 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)).

Luna has failed to set forth a plausible equal protection class of one claim.[3]   No constitutional violation exists, and Luna's § 1983 claim will be dismissed with prejudice for failure to state a claim.

---

[3] The Court would note that even if Luna had pled a violation of a constitutional right as is required under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978), for a claim against the City, it has neither pled the existence of a particular policy or custom, nor sufficiently alleged that the City's actions led to a constitutional violation. *See City of St. Louis v. Praptonik*, 485 U.S. 112, 127 (1988) (municipal entities are only held liable under § 1983 when a constitutional violation is caused by: (1) an express official municipal policy; (2) a custom created by a settled, widespread practice, that although it is not authorized by written law and is not an express official policy, it is "so permanent and well settled as to constitute a custom or usage," thus carrying the force of law; or (3) a decision made by a person with final decision making and policymaking authority (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 469, 481–83 (1970)). The City does not employ a specific policy for purposes of choosing towing company referrals, a fact to which both parties agree. (ECF No. 31, ¶ 15); (ECF No. 35, p. 1). There are no facts pled that establish Shaw and Sample had (or should have had) knowledge of the City's referral practice, or that any custom actually existed. Lastly, there are no facts pled that Shaw and/or Sample had the authority to implement and enforce policies and Luna does not provide any examples of any deliberate decisions they made in refusing to use Luna for towing referrals. The amended complaint only alleges they knew Luna sought inclusion as a towing referral for Defendants and knew that Luna had the "qualifications" to provide towing services. (ECF No. 31, ¶¶ 46). The allegation that Shaw and Sample "acquiesced" in the face of that supposed knowledge is not enough to state a § 1983 claim. (*Id.* at ¶¶ 40, 45).

Furthermore, as to the § 1983 claims against Shaw and Sample, even if Luna had pled a violation of a constitutional right, he failed to come forth with adequate facts to show Shaw and Sample's individual involvement. Liability under § 1983 attaches only when a plaintiff shows that a defendant was personally involved in the deprivation of his or her federal rights. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and

16

## IV.    CONCLUSION

For the foregoing reasons, Luna's claim will be dismissed with prejudice.    An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 3/12/26

---

acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* Luna has not provided any facts regarding Shaw and Sample's personal liability that meet this standard.  It has failed to come forth with facts as to how exactly these defendants were involved in the events.  No facts are pled that Shaw made any deliberate decisions in refusing to use Luna for towing referrals.  While the amended complaint states that Sample "was responsible for overseeing City operations, including practices affecting municipal services and vendor relationships," there are no facts pled that he had any involvement in towing referrals.  (ECF No. 31, ¶ 42).  In sum, Luna's generic and conclusory allegations are inadequate to establish Shaw or Sample's personal liability.

17